J-S15009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MONICA A. MATULA | |
| Appellant | No. 1297 MDA 2014 |

Appeal from the Judgment of Sentence May 13, 2014
In the Court of Common Pleas of Schuylkill County
Criminal Division at No(s): CP-54-CR-0001193-2013

BEFORE:  LAZARUS, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 29, 2015**

Monica A. Matula appeals from her judgment of sentence, imposed in the Court of Common Pleas of Schuylkill County, after she was convicted by a jury of driving under the influence of alcohol (DUI).[1]  Upon careful review, we affirm.

The trial court set forth the facts of this case as follows:

At about 1:00 a.m. on [May 25, 2013], Officer [Joseph] Krebs [of the Tamaqua Police Department] saw a white Jeep Cherokee vehicle – which he subsequently learned was being driven by [Matula] – proceed east towards the intersection of Routes 209 and 309 in Tamaqua.  The roadway had both a left turning lane and a straight/right turning lane.  The two lanes were marked on the roadway.

---

[1] 75 Pa.C.S.A. § 3802(a)(1).

The traffic light facing [Matula] was red. [Matula] stopped in the straight/right turning lane and a second vehicle in the left turning lane was moving towards the light. When the traffic light turned green, Officer Krebs saw [Matula] abruptly cut into the left turning lane into the path and in front of the other vehicle, almost striking that vehicle. The operator of the second vehicle slammed on its brakes to avoid a collision. [Matula] had executed the maneuver and thereafter made the left turn without utilizing any turn signal.

As a result of the inappropriate action by [Matula], Officer Krebs began to follow her vehicle. [Matula] drove about a half block on the one-way roadway she had entered and then stopped at the side of the road with her vehicle about "halfway off the roadway." Officer Krebs, who had not previously activated the siren or lights of his unmarked car, stopped behind [Matula's] vehicle. While he sat in the patrol car, Officer Krebs observed that [Matula] had her vehicle in reverse, as the reverse lights were activated the entire one to two minutes he was in his vehicle.

After finishing radio communication about the stop, Officer Krebs then approached [Matula] and asked for license, registration and proof of insurance documents. [Matula] fumbled and dropped all of her paperwork in her lap. Following what Officer Krebs thought was "a long time," [Matula] provided him a Pennsylvania driver's license. The officer noted [Matula] had very slurred speech, glassy bloodshot eyes, and was emitting a strong odor of alcoholic beverages about her facial area. [Matula] indicated that she had had two drinks that evening, had an argument with her boyfriend and was just out driving around. Officer Krebs testified that he "had no indication" that she had been crying.

Officer Krebs asked [Matula] to exit her vehicle so he could conduct standard field sobriety tests. When [Matula] exited her vehicle, she kept her left hand on the vehicle while she walked around it, until reaching the pavement. As Officer Krebs was advising [Matula] how to perform the walk-and-turn test, [Matula] swayed front to back and lost her balance.

After she lost her balance, [Matula] told Officer Krebs that she had a foot injury. However, [Matula] said she could perform the test. Officer Krebs believed [Matula] was wearing sandals and he saw nothing "out of the ordinary" with her feet. After the

- 2 -

officer explained the test again, [Matula] did nothing except look straight ahead.

As [Matula] was uncooperative in performing the test, Officer Krebs decide to take her into custody for suspicion of driving under the influence.  At first [Matula] pulled away from him and then cried and begged that she not be arrested.  After seating her in her car, Officer Krebs began to read [Matula] the chemical test warnings and consent form, known as the DL-26.  [Matula] cried, said she was probably over the legal limit and that she just wanted to go home.

Officer Krebs read [Matula] the consent form twice and gave her the opportunity to read it.  After Officer Krebs asked [Matula] to sign the form and to submit to the test, [Matula] said nothing except to ask about her vehicle and say that she wanted to go home.  Because [Matula] did not respond to the officer's request that she submit to testing, she was transported to her home.

Trial Court Opinion, 7/18/14, at 1-4.

A criminal complaint was issued on May 28, 2013, charging Matula with DUI, failing to employ the required position and method of turning (summary offense) and failing to signal when turning (summary offense).  A jury trial was held on April 9, 2014, after which Matula was found guilty of DUI.  The trial court further found Matula guilty of both summary offenses.  On May 13, 2014, Matula was sentenced to 1 to 5 years in prison plus fines and costs; her license was suspended for a period of 18 months and she was ordered to obtain a mental health evaluation and any recommended treatment.

Matula filed post-sentence motions, which were denied.  This timely appeal followed on July 25, 2014, in which Matula raises the following issue, *verbatim*, for our review:

A jury must find that a defendant had been properly warned of the consequences of refusing chemical testing – in a DUI context – in order to find that the defendant had refused to submit to testing. Here, the Commonwealth elicited a legal conclusion from a police officer on the parameters of his "obligation" to advise. The officer responded that he "Just [has to] advise them of their chemical test warnings." Where refusal – and specific consideration of the refusal element – was central to the Commonwealth's case – did the trial court err in overruling trial counsel's objection to such testimony?

Brief of Appellant, at 4.

We begin by noting:

The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (internal citations omitted).

The following exchange between counsel for the Commonwealth and Officer Krebs regarding form DL-26[2] comprises the testimony of which Matula complains:

_____

[2] Pennsylvania's "DL-26 form" is issued by the Pennsylvania Department of Transportation and is titled "Chemical Testing Warnings and Report of Refusal [to] Submit to Chemical Testing as Authorized by Section 1547 of the Vehicle Code in Violation [of] Section 3802 (relating to driving under the influence of Alcohol or Controlled Substance)." *Commonwealth v. Barr*, 79 A.3d 668, 669 n.2 (Pa. Super. 2013).
*(Footnote Continued Next Page)*

Q:     Okay.  And with reference to the DL-26, your obligation with reference to the DL-26 is to do what with that?

A:     Just advise them of their chemical test warnings.

MR QUINN:     Your Honor, I want to object to that and move to strike that.  His obligation, that's a legal conclusion.  His obligation, what he's supposed to do, that's a matter of interpretation by – by the Courts.

THE COURT:     It – it's overruled.

N.T. Trial, 4/9/14, at 83.

_(Footnote Continued)_ ───────────────────

The DL-26 [f]orm provides the following information:  (1) the licensee is under arrest for DUI in violation of Section 3802(a) of the Vehicle Code, 75 [Pa.C.S.A.] § 3802(a); (2) the officer is requesting a chemical test of a particular type (blood, urine, etc.); (3) it is the officer's duty to inform the licensee that, if the licensee refuses to submit to the chemical test, the licensee's operating privileges will be suspended for at least one year, that if the licensee refuses and is convicted [of] or pleads guilty to violating Section 3802(a) of the Vehicle Code (related to impaired driving), the licensee is subject to more severe penalties, the same as [if] he [were] convicted of driving with the highest rate of alcohol; and (4) it is the officer's duty to inform the licensee that the licensee does not have the right to speak with an attorney, or anyone else, before deciding whether to submit and that any request to speak to an attorney or anyone else after being provided the warnings or remaining silent when asked to submit to chemical testing will constitute a refusal, resulting in the suspension of the licensee's operating privileges and other enhanced criminal penalties if convicted of impaired driving.

**_Id._**, quoting **_Sitoski v. Commonwealth, Dep't of Transp._**, 11 A.3d 12, 15 n.2 (Pa. Cmwlth. 2010).

- 5 -

Matula claims that the trial court erred by allowing Officer Krebs to "render a legal conclusion on a critical element the jury had to decide." Brief of Appellant, at 11. Matula argues that, because a finding of refusal to submit to chemical testing increases the penalty for DUI,[3] pursuant to *Apprendi*,[4] the jury was required to find that (1) Matula was provided the implied consent warnings and (2) she refused to submit to testing. Matula asserts that Officer Krebs' testimony regarding his obligations with reference to form DL-26 was an opinion regarding a legal question that Officer Krebs was unqualified to render. Matula is entitled to no relief.

Contrary to Matula's assertion, Officer Krebs' challenged testimony did not address a "critical element the jury had to decide." The jury was not tasked with determining whether Officer Krebs had an obligation to advise Matula of the warnings contained in the DL-26 form. Indeed, Officer Krebs' "obligations" were irrelevant to the ultimate questions of fact to be decided

_____

[3] This was Matula's third DUI offense. Pursuant to 75 Pa.C.S.A. § 3803(a)(2), a third offense is generally graded as a second-degree misdemeanor carrying a maximum penalty of two years' imprisonment. *See* 18 Pa.C.S.A § 106(b)(7). However, because Matula refused chemical testing, section 3803(b)(4) provides that her offense be graded as a first-degree misdemeanor, which carries a penalty of not more than five years in prison. *See* 18 Pa.C.S.A § 106(b)(6). Moreover, 75 Pa.C.S. § 3804(c)(3) subjects a third-time offender who refuses chemical testing to a mandatory minimum sentence of one year's imprisonment.

[4] *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (holding that any fact that increases penalty for crime beyond prescribed statutory maximum must be submitted to jury, and proved beyond reasonable doubt).

by the jury. Rather, the jury was charged with deciding, based upon the evidence presented at trial, whether Officer Krebs did, in fact, provide Matula with the implied consent warnings and whether Matula declined to submit to chemical testing. *See Commonwealth v. Xander*, 14 A.3d 174 (Pa. Super. 2011) (refusal to submit to chemical testing necessarily requires *knowing* refusal insofar as police must have provided arrestee with warnings beforehand). Accordingly, even assuming, *arguendo*, that Officer Krebs' testimony amounted to an improper legal opinion,[5] the error was harmless. *See Commonwealth v. Holland*, 543 A.2d 1068, 1072 (Pa. Super. 1988) (opinions of lay witness on matter not in issue necessarily harmless in their effect).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/29/2015</u>

---

[5] We note that form DL-26 itself states that "it is the officer's duty" to inform a motorist of the information contained on the form. *See Barr*, *supra*.